UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:19-cv-20457

ALPARGATAS USA, INC.,
a Delaware corporation,

        Plaintiff,

v.

ALLURE SHOWROOM, INC., et al.,

        Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO
DISMISS COMPLAINT OR FOR MORE DEFINITE STATEMENT**

Plaintiff, Alpargatas USA, Inc. ("**Alpargatas**"), through undersigned counsel and pursuant to Fed. R. Civ. P. 12(a)(4) and S.D. Fla. L. R. 7.1(c), files its Response in Opposition to the Motion to Dismiss Complaint or for More Definite Statement ("**Motion**") [D.E. 38] filed by Defendants, SK Empire Limited Liability Company ("**SK Empire**") and Yaakov Dahan ("**Dahan**") (collectively, the "**Defendants**"), and states:

**I.    FACTUAL ALLEGATIONS**

Alpargatas S.A. ("**Alpargatas Brazil**") owns several trademarks related to the Havaianas® brand ("**Havaianas® Marks**"). [D.E. 1 at ¶ 19] It licenses the Havaianas® Marks for use in the United States, Pureto Rico, and Guam to its wholly-owned subsidiary, the Plaintiff here. *See id.* at ¶¶ 22-24.

Plaintiff, Alpargatas, alleges that it is the "exclusive licensee in the United States to market, sell, and distribute Havaianas® flip-flops." *Id.* at ¶ 23. Alpargatas further alleges that

"it has the exclusive license and right within the United States to import Havaianas® flip-flops, as well as to use, promote, and sublicense the Havaianas® Marks." *Id.* at ¶ 24.

Though not true, the SK Empire holds itself out to the public to be an authorized distributor and sales representative of Havaianas® flip-flops in the United States. *Id.* at ¶ 30. Dahan controls SK Empire and directs its actions. *Id.* at ¶ 7.

To retailers and consumers, the Havaianas® flip-flops that SK Empire sells and distributes appear to be authentic Havaianas® products. *Id.* at ¶ 31. They are materially different, however, from those authorized to be sold and that are sold and distributed in the United States exclusively by Alpargatas. *Id.* at ¶ 32.

Alpargatas has alleged claims against the Defendants under different provisions of the Lanham Act and related state-law causes of action. The Defendants' argument that Alpargatas lacks standing to do so fails as do their arguments that Alpargatas fails to state a claim upon which relief can be granted.

## II.   ARGUMENT

### A. Alpargatas has Standing.

#### i.   *Legal Standard*.

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Stalley ex rel. United States v. Orlando Reg'l Healthcare System., Inc.*, 524 F. 3d 1229, 1232 (11th Cir. 2008) (internal quotation omitted). Defendants may seek dismissal "under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Id.* "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the

2

purposes of the motion." *Id.* "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Id.* at 1232-33. The Defendants' attempt to factually attack the Complaint, however, is contradicted by competent evidence which conclusively establishes that Alpargatas' standing to assert the claims it does in the Complaint.

      ii.      *Exclusive Licensees Have Standing to Allege Claims Under Section 32 of the Lanham Act*.

In Count III of its Complaint, Alpargatas alleges claims to enforce the Havaianas® Marks under 15 U.S.C. § 1114. [D.E. 1 at ¶¶ 74-82] The Defendants argue that Alpargatas lacks standing to pursue those claims because it has not alleged that it is the "'registrant' under 15 U.S.C. § 1127. . ." and a mere exclusive licensee will never be able to establish same. [D.E. 38 at pp. 2, 5] Their argument is misplaced; and the support upon which they rely is inapplicable.

"Section 32 of the Lanham Act, codified as 15 U.S.C. § 1114, provides that an action for trademark infringement may only be brought by the 'registrant' of the mark." *Gansevoort Fla., LLC v. Sandy Lane Residential LLC,* 2011 WL 13223846, *4 (S.D. Fla. 2011). "The Act defines 'registrant' to include 'legal representatives, predecessors, successors and assigns.'" *Id.* (quoting 15 U.S.C. 1127). Thus, even in the absence of registration, "the assignee of the trademark at the time a suit is filed has standing to bring a trademark infringement claim under the Lanham Act." *Sream, Inc. v. Shop & Save 909, LLC,* 2017 WL 7794330, *2 (S.D. Fla. 2017) (Williams, J.).

As this very Court and others previously ruled, "a truly exclusive licensee, or one who has the right to exclude his licensor from using the mark, is equated with the assignee for the purpose of bringing suit to enforce the mark." *Id.; accord Fin. Inv. Co. (Bermuda) v. Geberit AG,* 165 F. 3d 526, 531-32 (7th Cir. 1998) (same); *Sream Inc. v. LB Smoke Shop, Inc.,* 2017 WL

3

2735575, *3 (S.D. Fla. 2017) (same); *BMW of North American v. Au-tomotive Gold, Inc.,* 1996 WL 1609124, *6 (M.D. Fla. 1996)(recognizing that several courts have recognized the right of an exclusive licensee to initiate a civil action under § 1114); *see also Hako-Med USA, Inc. v. Axiom Worldwide, Inc.,* 2006 WL 3755328, *6 (M.D. Fla. 2006)(licensee had standing under § 1114 where license agreement did not restrict ability to enforce licensed trademarks).  Thus, a truly exclusive licensee such as Alpargatas "may have standing to sue under § 1114 if the license agreement amounts to a de facto assignment of the mark."  *Gansevoort Fla, LLC,* 2011 WL 13223846 at *4.  (internal quotation omitted).

Despite ample support that an exclusive licensee is equated with an assignee for standing purposes, the Defendants nonetheless seem to argue that exclusive licensees can never has standing under 15 U.S.C. 1114 because "Congress did not include 'licensee' or 'exclusive licensee' among the terms that define a 'registrant' under 15 U.S.C. 1127. . ." [D.E. 38 at p. 5] They rely a single case in support; and such reliance is misplaced.

In *Heron Development Corp. v. Vacation Tours, Inc.,* upon which the Defendants rely, the plaintiff conceded "that it is not the registrant of the trademarks at issue."  *Heron Development Corp. v. Vacation Tours, Inc.,* 2017 WL 5957743, *9 (S.D. Fla. 2017).   As such, the court held that the plaintiff "does not have standing to sue for trademark infringement under § 1114 of the Lanham Act."  *Id.*  Alpargatas makes no such concession.  As set forth more fully below, Alpargatas is a truly exclusive licensee that is to be equated with a registrant for standing purposes. *See Sream Inc.,* 2017 WL 2735575 at *3.

The Defendants nonetheless rely on dicta from *Heron Development Corp.* that "only trademark registrants have standing to sue under § 1114 of The Lanham Act."  *Heron Development Corporation,* 2017 WL 5957743 at *8.  However, the precedent upon which the

court in *Heron* relied upon indicates clearly that a truly exclusive licensee can, in fact, have standing to enforce trademarks.

In the opinion the court cited *Heron,* the Second Circuit Court commented (also in dicta): "Congress could easily have included 'licensee' or 'exclusive licensee' among the terms in 15 U.S.C. § 1127 that define 'registrant' but it shoes instead to limit standing to parties having a more specific set of interests in the registered mark." *Federal Treasury Enterprise Sojuzplodoimport v. SPI Spirits Ldt.,* 726 F. 3d 62, 78 (2d Cir. 2013). It also noted, however, that a plaintiff which can show that its license "amounts, in fact, to an assignment [may] establish entitlement to sue under Section 32(1)." *Id.* at 78. This, of course, is consistent with the current status of the law that this Court articulated four months prior to *Heron*. *See Sream, Inc.,* 2017 WL 7794330 at *2.

The Second Circuit further noted—contrary to what Alpargatas alleges and conclusivelt proves below—that "plaintiff's complaint does not allege facts plausibly showing that [it] was granted an *exclusive* license to use or enforce the Marks, and none of the relevant documents suggest the [licensor's] intent to grant such an exclusive license." *Id.* (emphasis in original). Thus, both *Heron* and the applicable case cited therein do not apply here.

If Alpargatas can prove that it is a truly exclusive licensee, it establishes standing to pursue its claims under the Lanham Act. The Defendants appear to acknowledge this in footnote 4 of their Motion. [D.E. 38 at p. 5 n. 4] Alpargatas can prove that is a truly exclusive licensee and does so below.

### iii. *Alpargatas is a Truly Exclusive Licensee*.

Where, as here, "a plaintiff does not own the trademark at issue, courts generally determine standing based on the licensing agreement between the plaintiff and the owner of the

5

mark." *Gansevoort Fla, LLC,* 2011 WL 13223846 at *4. "The determination of whether a licensee has standing to sue under § 1114 largely depends on the rights granted to the licensee in the licensing agreement." *Id.; accord Hako-Med USA, Inc. v. Axiom Worldwide, Inc.,* 2006 WL 3755328, *6 (M.D. Fla. 2006)(licensee had standing under § 1114 where license agreement did not restrict ability to enforce licensed trademarks). In this District, a trademark licensee will have standing under § 1114 where a license agreement "purports to grant [plaintiff] an exclusive license to the trademarks at issue, along with full enforcement rights." *Sream, Inc. v. LB Smoke Shop, Inc.,* 2017 WL 2735575, *4 (S.D. Fla. 2017); *accord Sream, Inc.,* 2017 WL 7794330 at *2.

The Trademark License Agreement ("**License Agreement**") between the owner of the Havaianas® Marks and Alpargatas provides that Alpargatas holds "<u>an</u> <u>exclusive</u>, non-transferable, royalty free license to use and <u>enforce</u> the Trademarks and all rights therein and goodwill associated therewith in connection with the sale, marketing and distribution of the Products in the Licensed Territory <u>to</u> <u>the</u> <u>exclusion</u> <u>of</u> <u>Licensor</u>." Trademark License Agreement, attached hereto as Exhibit "A," at ¶ 2.1 (emphasis added). In addition, Alpargatas has the exclusive right to enforce the Havaianas® Marks in the United States and is even permitted to register its rights in the Havaianas® Marks to the extent necessary. *Id.* at ¶ 2.4. Alpargatas may also "sublicense the Trademarks, to the extent that it is necessary or convenient for [Licensee] to be able to properly carry out its business." Further, the License Agreement expressly provides that the licensor's ownership rights in the Havaianas® Marks are subordinate Alpargatas' rights thereunder during its term. *Id.* at ¶ 4.2. Having provided "competent proof to support its jurisdictional allegations" by way of the License Agreement, this Court should find that Alpargatas has standing to assert its claims pursuant to Section 32 of the Lanham Act. *See*

www.kymplaw.com • Kaplan Young & Moll Parrón PLLC • 600 Brickell Ave. Suite 1715, Miami, FL 33131 • 305.531.2424

*Sream, Inc.,* 2017 WL 2735575 at *4; *accord Drew Estate Holding Co., LLC v. Fantasia Distribution, Inc.,* 875 F. Supp. 2d 1360, 1366-67 (S.D. Fla. 2012).

      iv.      <u>*Alpargatas Also Has Standing Under Section 43(a) of the Lanham Act*</u>.

Defendants argue that Alpargatas lacks standing to pursue its claims in Counts I and XII of the Complaint under section 43(a) of the Lanham Act because Alpargatas "has not shown an assignment of the right to enforce the Havaianas Marks." [D.E. 38 at p. 6] However, the License Agreement conclusively refutes the foregoing. *See* Exhibit "A."

"Unlike § 32 of the Lanham Act, § 43(a), codified as 15 U.S.C. 1125(a), allows any person who believes that he or she is likely to be damaged by a defendant's prohibited conduct to bring a civil action." *Gansevoort Fla, LLC,* 2011 WL 13223846 at *5. As with claims pursuant to section 32 of the Lanham Act, a licensee such as Alpargatas' rights under section 43(a) "largely depends on the rights granted to the licensee in the licensing agreement." *Kroma Makeup EU, LLC v. Boldfact Licensing + Branding, Inc.,* 920 F. 3d 704, 708 (11th Cir. 2019).

Here, the agreement by which Alpargatas acquired its rights in the Havaianas® Marks expressly provides that Alpargatas has exclusive rights to enforce the Havaianas® Marks in the United States. *See* Exhibit "A" at ¶¶ 2.1, 2.4. The Defendants' argument to support dismissal of Havaianas' Section 43(a) claims accordingly fails.

      v.      <u>*Alpargatas has Standing to Enforce the Havaianas® Marks Under Florida Law*</u>.

The Defendants' argue that Alpargatas "separately lacks standing to raise Count IV under Section 495.151, Florida Statutes, because it is not the 'owner' of the Havaianas Marks." [D.E. 38 at p. 7] As with their other arguments regarding standing, the foregoing also lacks merit.

Though similar, section 495.151, Florida Statutes, eliminates the need to show competition between parties or confusion about source of good or services as required under the

7

Lanham Act or for common law trademark infringement.  *See Ocean Bio-Chem, Inc. v. Turner Network Television, Inc.,* 741 F. Supp. 1546, 1561 (11th Cir. 1990)(internal citations omitted).  The Eleventh Circuit long-ago held that the same legal principals govern federal and Florida state claims for trademark dilution under Fla. Stat. § 495.151.  *See Aceto Corp. v. TherapeuticsMD, Inc.,* 953 F.Supp. 2d 1269, 1285-86 (S.D. Fla. 2013)(citing *Gift of Learning Found, Inc. v. TGC, Inc.,* 329 F. 3d 792, 801 (11th Cir. 2003).  Because Alpargatas is a truly exclusive licensee sufficient to confer standing under the Lanham Act as if it were the owner of the Havaianas® Marks, it similarly has standing to enforce Florida's version of same.  *Cf. id.* at 1285 (dismissing claim pursuant to Fla. Stat. § 495.151 because plaintiff had not established standing under Section 43(a)).

### B. <u>Dismissal Pursuant to Rule 12(b)(6) is Inappropriate</u>.

#### i. <u>Legal Standard</u>.

"Under Federal Rule of Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal,* 556 U.S. 665, 678, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 888 (2009) (internal quotation omitted).  It is well established that, for purposes of satisfying the pleading requirements of Rule 8(a), "[f]actual allegations in a complaint need not be detailed but 'must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Sinaltrainal v. Coca-Cola Co.*, 578 F. 3d 1252, 1261 (11th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1959, 167 L.Ed. 2d 929 (2007)).

### ii.    *The Complaint is Not a Shotgun Pleading.*

The Defendants argue that the various state-law counts must be dismissed because (a) the Complaint is a shotgun pleading; (b) they cannot possibly respond because Alpargatas "lumps various state law theories into one claim;" and (c) Alpargatas "does not state whether some or all of the marks were allegedly infringed. . ."[1]   [D.E. 38 at pp. 9-11]   All three arguments lack merit.

First, the Complaint is not considered a "shotgun pleading" as the Eleventh Circuit defines such pleadings to be.  *See Weiland v. Palm Beach County Sheriff's Office,* 792 F. 3d 1313, 1324 (11th Cir. 2015).  Second, alleging a single count for common law unfair competition under different theories does not violate Rule 8.

As Judge Easterbrook noted nearly thirty-years ago:   "Identifying legal theories may assist defendants and the court in seeing how the plaintiff hopes to prevail, but this organization does not track the idea of 'claim for relief' in the federal rules."   *N.A.A.C.P. v. American Family Mut. Ins. Co.,* 978 F.2d 287, 292 (7th Cir.1992).  A complaint, however, "need not identify the law on which the claim rests, and different legal theories therefore do not multiple the number of claims for relief."  *Id.*   "One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate."  *Id.*   Further, Alpargatas "is not required to plead a choice of law or to identify whether its claims are based in statute or common law at this stage in the proceedings."   *Jewelry Repair Enterprises, Inc. v. Son Le Enterprises, Inc.,* 2016 WL 8739605, *4 (S.D. Fla. 2016).  The Defendants cite no law to the contrary.

Nor is it fatal that Alpargatas alleges the same claims against more than one defendant in the same count.  As is plainly evident, Alpargatas alleges claims against every defendant in each

---

[1] Alpargatas notes that except for Redzing, Inc., which has defaulted, every other defendant to this action that has been able to respond to the allegations in Count II.  [D.E. 37, 44]

count.  [D.E. 1] That is, each defendant is individually and independently liable to Alpargatas as a result substantively similar conduct.  *See id.*  The defined term "Defendants" clearly includes all of the defendants; so referring to "All of the Defendants" in Count XII is no different that referring to "the Defendants" in every other count.  *Id.*  If the Defendants truly cannot respond to the Complaint as a result of the asserting the same causes of action against every defendant in single counts, Alpargatas should be permitted to amend its complaint to separate out the each defendant and turn twelve counts into seventy-two.  Doing so, however, will serve no purpose than to turn a relatively succinct complaint into a monstrosity of repetitive allegations.

Third, Alpargatas adequately alleges the trademarks that it seeks to enforce:  All of the Havaianas® Marks, a term defined in the Complaint to encompass every trademark identified therein.  [D.E. 1 at ¶ 19]

Further, *Valoro, LLC,* which the Defendants cite, actually supports a denial of their Motion.  There, the court Ordered a more definite statement because the plaintiff's allegations presented "a plurality of marks [it] contends it uses, rather than specifying which marks (either registered or unregistered) are infringed."  *Valoro, LLC v. Valero Energy Corp.,* 2014 WL 3920035, *5 (S.D. Fla. 2014).  Unlike the plaintiff there, Alpargatas does here.  [D.E. 1]  The *Valoro* court also stated that "a party should identify the actual trademark and/or registration alleged to be infringed when making a claim for trademark infringement." *Id.* at *4.  Because Alpargatas does just that in its Complaint, a more definite statement is not necessary.  [D. E. 1]

### III.   CONCLUSION

Based on the foregoing, this Court should deny the Defendants' Motion.  Alternatively this Court should permit Alpargatas to amend its pleading to provide a more definite statement.

10

Respectfully submitted,

**KAPLAN YOUNG & MOLL PARRÓN PLLC**

*Attorneys for Plaintiff*
Brickell World Plaza
600 Brickell Avenue
Suite 1715
Miami, Florida 33131
Tel: (305) 531-2424
Fax: (305) 531-2405
By: */s/ Justin B. Kaplan*
JUSTIN B. KAPLAN, ESQ.
Florida Bar No. 0033725
*jkaplan@kymplaw.com*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 6, 2019, a true and correct copy of the foregoing was electronically filed with the Court using CM/ECF and that the foregoing document was served upon counsel of record via the Notice of Electronic Filing generated by CM/ECF and upon Defendants, Redzing, Inc., and Fred Solomon, via email: *redzing@aol.com*.

          */s/ Justin B. Kaplan*
          JUSTIN B. KAPLAN.