# EXHIBIT

# A

---

# Trademark License Agreement

---

**ALPARGATAS S.A.**

**and**

**ALPARGATAS USA Inc.**

# TRADEMARK LICENSE AGREEMENT

This TRADEMARK LICENSE AGREEMENT (This "**Agreement**") is dated as of January 1, 2015, by and between,

**ALPARGATAS, S.A.**, a company incorporated under the laws of Brazil, and having its main office at Avenida Doutor Cardoso de Melo, No. 1336, 14th floor, in the City of São Paulo, State of São Paulo, Brazil, represented by Ms. Carla Schmitzberger and Mr. Márcio Luiz Simões Utsch, entitled to act in the name and on behalf of the Company by virtue of its Bylaws (hereinafter the "**Licensor**" or the "**Party**")

and

**ALPARGATAS USA, INC.**, a Delaware corporation ("**Company**") with its principal place of business at 33 East 33rd Street, Suite 501, New York, New York 10016, represented by Ms. Carla Schmitzberger and Mr. Márcio Luiz Simões Utsch, entitled to act in the name and on behalf of the Company by virtue of its Bylaws (hereinafter the "**Licensee**" or the "**Party**").

For the purposes of this Agreement, both parties shall be hereinafter jointly referred to as the "**Parties**".

Each Party hereby represents having the legal capacity to enter into and perform this Agreement, to the full effect of the same.

## RECITALS

**A.-** **Whereas** the Licensor holds the entire right, title and interest in the trademarks specified in Exhibit 1 (the "**Trademarks**");

**B.-** **Whereas**, the Licensee desires to use the Trademarks in the Licensed Territories in connection with the License Field;

**C.-** **Whereas**, the Licensor is willing to permit such use under the terms and conditions set forth herein.

**Now therefore**, it is hereby agreed as follows:

## ARTICLE I
## DEFINITIONS

"**Licensed Trademarks**" shall mean the Trademarks specified in Exhibit 1, duly registered in the United States Patent and Trademark Office, free of all liens, burdens and any other encumbrance.

"**License Field**" shall mean the sale, marketing and distribution of the Products;

"**Products**" shall mean footwear, accessories and any other related products that bear the Trademarks;

"**Licensed Territory**" shall mean the United States of America and Canada.



## ARTICLE II
## GRANT OF LICENSE

**2.1.** Subject to the terms and conditions of this Agreement, Licensor hereby grants to Licensee, an exclusive, non transferable, royalty free license to use and enforce the Trademarks and all rights therein and goodwill associated therewith in connection with the sale, marketing and distribution of the Products in the Licensed Territory to the exclusion of Licensor.

**2.2.** Licensor undertakes to license to the Licensee an exclusive, non-transferable, royalty free license to use and enforce those trademarks registered after the date of this Agreement and directly related to the Products and all rights therein and goodwill associated therewith in connection with the sale, marketing and distribution of the Products in the Licensed Territory to the exclusion of Licensor, provided that such trademarks are registered in those countries in which the Licensee exercises its activity.

**2.3.** Licensor grants to Licensee the right to sublicense the Trademarks, to the extent that it is necessary or convenient for the latter to be able to properly carry out its business.

**2.4.** The Licensee will be entitled to register the License rights granted pursuant to this Agreement, if necessary and Licensee shall further have the exclusive right to enforce such Trademarks in the Licensed Territory.

## ARTICLE III
## TERM AND TERMINATION OF THE AGREEMENT

**3.1.** The term of this Agreement shall commence when it is signed by both parties and shall extend for a twenty (20) year period (the "Term") and will expire at the end of such period unless such Term is renewed in accordance with this Agreement.

**3.2.** The Term of this Agreement shall automatically renew for periods of ten (10) years unless either Party provides ninety (90) days advance written notice to the other Party.

**3.2.1.** The Parties may terminate this Agreement for any reason, at any time and without any charge, by providing ninety (90) days prior written notice to the other Party.

## ARTICLE IV
## USE OF THE TRADEMARK AND QUALITY

**4.1.** The rights and obligations related to the use of the Trademarks are limited to the terms of this Agreement.

**4.2.** All rights of use relating to the shape, design, material or colors of the Trademark shall remain the property of the Licensor, and may not be used by the Licensee after the termination of this Agreement without the prior written consent of the Licensor. Licensor's ownership rights in the Trademarks are subordinate to the rights granted to Licensee in this Agreement during the term of this Agreement.

**4.3.** Licensee shall ensure that the use of the Trademarks in association with the License Field meets quality standards prescribed by or on behalf of Licensor and as communicated by or on behalf of Licensor to Licensee from time to time, in accordance with all applicable laws and regulations and in accordance with sound commercial practice. Licensee shall furthermore ensure that the Products maintain the highest standards and shall be of such quality that the goodwill associated with the Trademarks is preserved.



**4.4.** Licensor may inspect, upon five business days notice, during regular business hours and without disruption of Licensee's business and personnel, Licensee's records relating to the Products, the obligations of Licensee and the use of the Licensed Trademarks and the fulfilment of the obligations of Licensee.

**ARTICLE V**
**INDEMNITY**

**5.1.** Licensor does not assume any liability for Licensee, its affiliates or third parties in respect of claims arising from use of the Trademark, the use or application of the Trademarks to Products by Licensee ("**Liability**").

**5.2** Licensee shall not register, adopt or contest the validity of the Trademarks, nor will it register or seek to register or adopt any other marks, names, or other indicia of origin that are confusingly similar to the Trademarks without the prior written consent of Licensor.

**5.3.** Licensee will defend, indemnify and hold Licensor harmless from and against any and all claims, suits, losses, liabilities, damages or expenses (including reasonable attorneys' fees) arising in any way whatsoever from Licensee's design, promotion, sale or distribution of the Products, any services provided in connection therewith, or any acts, omissions, statements or representations of any employee, agent, officer, director or sub-licensee relating thereto. Licensor shall notify Licensee of any such claim, suit, loss, liability, damage or expense promptly upon receiving notice or being informed of the existence thereof.

**5.4.** The terms of this Article V shall survive termination of this Agreement.

**ARTICLE VI**
**TERMINATION**

**6.1** This Agreement may be terminated by Licensor, at Licensor's sole discretion, at any time if:

a) any material provision of this Agreement, which is substantial for the Licensor, becomes invalid;

b) Licensee fails to comply with the quality standards set forth in this Agreement;

c) The Licensee uses any of the Licensed Trademarks for products other than the Products, in territories other than the Licensed Territories or for purposes not expressly contemplated by this Agreement;

d) Licensee attempts to assign or transfer any of its rights or its duties under this Agreement or attempts to sublicense its rights to license or sublicense the use of the Trademarks without the prior written consent of the Licensor; or

e) Licensee fails to perform any of the terms and conditions of this Agreement and fails, after receiving written notice from Licensor of such breach, to remedy such breach within 30 days. Such remedy period shall not apply if Licensor makes a reasonable and good faith determination that Licensee engaged in repeated acts of default in which case Licensor may at its sole discretion, serve written notice upon Licensee that there will be no remedy period permitted for future acts of default.

**ARTICLE VII**
**CONSEQUENCES OF TERMINATION**
**OF THIS AGREEMENT**

ALPARGATAS JURÍDICO APROVADO

**7.1.** Upon expiration or termination of this Agreement for any reason, all rights granted to Licensee under this Agreement shall immediately cease and revert to Licensor. Except to the extent approved in writing by Licensor and, in Licensor's sole discretion, Licensee agrees to immediately cease and desist from any use of the Trademarks in the License Field in the License Territory. Licensee agrees that it will not thereafter adopt, use or refer to any trademark, service mark, logo, design, corporate name, company name, trade name, domain name, or other identification, that is derived from or is likely to be confused with the Trademarks, or any other trademark owned by or licensed to Licensor or any of Licensor's affiliates. Licensee may sell any remaining Products that are in stock for a six (6) months period, starting from the expiration or termination of this Agreement. After this period, Licensee must destroy the Products, except as otherwise expressly agreed by the Parties.

**7.2.** Upon termination of this Agreement and the License, the Licensee shall not enjoy any indemnity right whatsoever.

**7.3.** Upon termination Licensor shall be free to use, manufacture, sell, market or distribute the Products or services in the License Field in the License Territory at its sole choice or grant third parties a license to conduct said use.

**7.4.** Termination or expiration of this Agreement for any reason whatsoever shall not release either party from any liability which at said time has already accrued to the other party nor affect in any way the survival of any other right, duty or obligation of either party which is expressly stated elsewhere in this Agreement to survive such termination.

**7.5.** Upon expiration or termination of this Agreement any license granted by Licensee to a third party in the normal course of its business shall remain in full force and effect as if this Agreement has not expired or been terminated. Under no circumstances shall this permit Licensee to grant any additional licenses after termination or expiration of this Agreement.

## ARTICLE XIII
## CONFIDENTIALITY

**8.1.** During the course of this Agreement, each Party may be a disclosing Party (hereinafter called "**Discloser**") for transmitting certain proprietary information to the other Party (hereinafter called "**Recipient**"). Recipient agrees to treat as confidential all such proprietary information, including, but not limited to, all information, written or oral, relating thereto, inventions and other developments relating to products, know how, concepts, techniques, drawings, specifications, processes, computer programs, designs and systems, manufacturing and marketing information received from Discloser, and Recipient agrees not to publish such information or disclose same to others except to those employees, subcontractors and sublicenses to whom disclosure is necessary in order to exploit the Licensed Trademarks to the fullest extent permitted hereunder. Recipient shall inform such employees, subcontractors and sublicenses of the confidential nature of such information and shall obligate them in writing to keep same confidential. Recipient further agrees not to use such proprietary information for Recipient's own benefit or for the benefit of others, other than in accordance with this Agreement, without Discloser's prior written consent, and that all tangible materials, including written material, photographs, discs or other documentation embodying such proprietary information shall remain the sole property of Discloser. Upon Discloser's request, a Receiving Party shall return any and all copies of Discloser's confidential information or, at Discloser's option, the Receiving Party shall destroy such copies and notify Discloser in writing when such copies have been destroyed.

**8.2.** The foregoing obligations of confidentiality do not apply to information which: (i) is or becomes part of the public domain; (ii) is required to be disclosed pursuant to applicable law, subpoena or other order from a court, regulatory requirement of any kind or government agency, provided that in the event of such a compelled disclosure (to the extent permissible under applicable law), the Party required to disclose notifies the other Party as soon as reasonably practicable to enable the other Party to contest or limit such compelled disclosure; or (iii) is



required to be disclosed in a litigation between the Parties herein (whether or not other parties are involved).

**8.3.** Without prejudice to the term of this Agreement, the Parties agree that the above confidentiality obligations shall survive for a period of ten (10) years from the expiration or termination of this Agreement for any reason whatsoever.

## ARTICLE IX
## MISCELLANEOUS

**9.1.** Assignment. This Agreement and the rights and obligations hereunder may not be assigned by Licensee without the express prior written consent of Licensor, which consent may be refused in Licensor's sole discretion; provided, however, that this Agreement shall be binding upon, and inure to the benefit of, any assigns of Licensee permitted by Licensor. Otherwise, in the event that Licensee seeks to assign its rights and obligations to a third party without Licensor's written consent, this Agreement shall terminate.

**9.2.** No Implied Waiver. No waiver by a party of any default of the other party in the performance of any provision of this Agreement shall apply to or be deemed a waiver of any other default. Similarly, no waiver by a party of any provision hereof shall operate as a waiver of any succeeding breach of such provision or as a waiver of the provision itself.

**9.3.** Amendment. This Agreement may be amended only with the express written consent of both parties.

**9.4.** Severability. Any portion or provision of this Agreement that is invalid, illegal or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective only to the extent of such invalidity, illegality or unenforceability without affecting in any way, the remaining portions or provisions of this Agreement in such jurisdiction or, to the extent permitted by law, rendering that or any other portion or provision of this Agreement invalid, illegal or unenforceable in any other jurisdiction.

**9.5.** Notices. Any notice, demand, certificate, claim or other communication under this Agreement shall be in writing and shall be deemed to have been given upon the delivery or mailing thereof, as the case may be, if delivered personally or sent by certified mail, return receipt requested, postage prepaid, to the following addresses (or at such other addresses as Licensor or Licensee may specify by notice to the other):

**If to Licensee:**

**Alpargatas USA, Inc.**
33 East 33rd Street, Suite 501
New York, New York 10016
USA

**If to Licensor:**

**Alpargatas S.A.**
Av. Doutor Cardoso de Melo, No. 1336, 14th floor
Sao Paulo
Brazil

**9.5.1.** Notwithstanding the foregoing provisions of this Article 10.5, if the nature of the matter giving rise to a notice requires expedited transmission, the party giving such notice shall use all reasonable measures to deliver such notice by expedited delivery (including, without limitation, delivery by facsimile transmission).



**9.6.** No Third-Party Beneficiaries. This Agreement is not intended and shall not be construed to be for the benefit of any Person (other than the parties hereto and their respective successors and permitted assigns).

**9.7.** Counterparts. This Agreement may be executed in counterparts, each of which shall be an original and all of which shall constitute one and the same document.

**9.8.** Governing Law. This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of New York, USA, and all rights and remedies shall be determined under such laws, without regard to principles of conflict of laws.

**9.9.** Jurisdiction. The parties waive their own jurisdiction forum, if applicable, and they submit any dispute, controversy or claim arising out of or in connection with this contract, or the breach, termination or invalidity arisen from this contract to the courts of the State of New York located in New York, New York.

**[SIGNATURES FOLLOW ON THE NEXT PAGE]**



**IN WITNESS WHEREOF**, the parties hereto have hereunder executed this Agreement.

For and on behalf of:
**Alpargatas S.A.**

By: ______________________
Name: Márcio Luiz Simões Utsch
Title: Director

By: ______________________
Name: Carla Schmitzberger
Title: Director

For and on behalf of
**Alpargatas USA, Inc.**

By: ______________________
Name: Márcio Luiz Simões Utsch
Title: Director

By: ______________________
Name: Carla Schmitzberger
Title: Director



**EXHIBIT 1**

## Trademarks

| Marcas em nome de: | ALPARGATAS S.A. | | | | | Período de Renovação | | | |
|---|---|---|---|---|---|---|---|---|---|
| *País* | *Marca* | *Apresentação* | *Classe* | *Processo* | *Depósito* | *Vigência* | *Início* | *Fim* | *Situação* |
| ESTADOS UNIDOS | HAVAIANAS | Nominativa | 25 | 1858280 | 13/09/1993 | 11/10/2014 | 12/10/2023 | 11/10/2024 | Registro |
| ESTADOS UNIDOS | HAVAIANAS | Nominativa | 25 | 3069819 | 26/08/2004 | 21/03/2006 | 22/03/2015 | 21/03/2016 | Registro |
| ESTADOS UNIDOS | HAVAIANAS | | 25 | 1906924 | 13/09/1993 | 18/07/2005 | 19/07/2014 | 18/07/2015 | Registro |
| ESTADOS UNIDOS | HAVAIANAS | Nominativa | 18<br>24<br>25 | 4222298 | 21/08/2006 | 09/10/2012 | 10/10/2021 | 09/10/2022 | Registro |
| ESTADOS UNIDOS | HAVAIANAS | | 25 | 77858021 | 27/10/2009 | 23/10/2012 | 24/10/2021 | 23/10/2022 | Registro |
| ESTADOS UNIDOS | HAVAIANAS | Nominativa | 35 | 85305295 | 26/04/2011 | 21/08/2014 | 22/08/2023 | 21/08/2024 | Registro |
| ESTADOS UNIDOS | HAVAIANAS | | 25 | 4065527 | 22/06/2010 | 06/12/2011 | 07/12/2020 | 06/12/2021 | Registro |
| ESTADOS UNIDOS | HAVAIANAS | | 25 | 85702980 | 14/08/2012 | 25/02/2014 | 26/02/2023 | 25/02/2024 | Pedido |
| ESTADOS UNIDOS | HAVAIANAS | | 25 | 85885757 | 25/03/2013 | | | | Pedido |
| ESTADOS UNIDOS | HAVAIANAS | | 25 | 85885664 | 25/03/2013 | | | | Pedido |



| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ESTADOS UNIDOS | HAVAIANAS | | 25 | 85926560 | 08/05/2013 | | | | Pedido |
| ESTADOS UNIDOS | HAVAIANAS ALWAYS SUMMER | Nominativa | 25 35 | 85812268 | 28/12/2012 | 03/06/2014 | 04/06/2023 | 03/06/2024 | Registro |
| ESTADOS UNIDOS | HAVAIANAS DAY POCKET | Nominativa | 18 | 77441369 | 07/04/2008 | 26/02/2013 | 27/02/2022 | 26/02/2023 | Registro |
| ESTADOS UNIDOS | havaianas elipse (Brand Extension) | havaianas | 26 | 86150063 | 20/12/2013 | | | | Pedido |
| ESTADOS UNIDOS | Havaianas estilizada (Brand Extension) | havaianas | 26 | 86150100 | 20/12/2013 | | | | Pedido |
| ESTADOS UNIDOS | Havaianas Flat | HAVAIANAS FLAT | 25 | 85947262 | 31/05/2013 | 11/11/2014 | 12/11/2023 | 11/11/2024 | Registro |
| ESTADOS UNIDOS | Havaianas High | HAVAIANAS HIGH | 25 | 85947239 | 31/05/2013 | 10/06/2014 | 11/06/2023 | 10/06/2024 | Registro |
| ESTADOS UNIDOS | HAVAIANAS SEMPRE VERÃO | Nominativa | 25 35 | 4612069 | 28/12/2012 | 30/09/2014 | 01/10/2023 | 30/09/2024 | Registro |
| ESTADOS UNIDOS | HAVAIANAS SOUL | Nominativa | 25 | 4326238 | 01/09/2009 | 30/04/2013 | 01/05/2022 | 30/04/2023 | Registro |
| ESTADOS UNIDOS | Havaianas Sport | HAVAIANAS SPORT | 25 | 85947291 | 31/05/2013 | 01/07/2014 | 02/07/2023 | 01/07/2024 | Registro |
| ESTADOS UNIDOS | Havaianas Surf | HAVAIANAS SURF | 25 | 85947171 | 31/05/2013 | 18/11/2014 | 19/11/2023 | 18/11/2024 | Registro |
| ESTADOS UNIDOS | HAVAIANAS WEARABLE CONTAINERS | Nominativa | 18 | 77430823 | 25/03/2008 | 26/02/2013 | 27/02/2022 | 26/02/2023 | Registro |
| ESTADOS UNIDOS | HAVIES | HAVIES | 25 | 3859023 | 18/08/2009 | 10/12/2010 | 11/12/2019 | 10/12/2020 | Registro |





| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ESTADOS UNIDOS | LOGO ARROZ | 25 | 77705566 | 02/04/2009 | | | | Pedido |
| ESTADOS UNIDOS | Logo arroz (Brand Extension) | 26 | 86150111 | 20/12/2013 | | | | Pedido |
| ESTADOS UNIDOS | LOGO CHINELO | 14<br>18<br>24<br>25<br>35 | 4503919 | 25/06/2012 | 01/04/2014 | 02/04/2023 | 01/04/2024 | Registro |
| ESTADOS UNIDOS | Logo chinelo (Brand Extension) | 26 | 86150086 | 20/12/2013 | | | | Pedido |
| ESTADOS UNIDOS | LOGO GREGA | 25 | 77705583 | 02/04/2009 | 16/10/2012 | 17/10/2021 | 16/10/2022 | Registro |
| ESTADOS UNIDOS | logo grega (Brand Extension) | 26 | 86150045 | 20/12/2013 | | | | Pedido |
| ESTADOS UNIDOS | logo seis gregas (Brand Extension) | 25<br>26 | 86150116 | 20/12/2013 | | | | Pedido |
| ESTADOS UNIDOS | Marca Posicional (Grega) | 25 | 85926783 | 08/05/2013 | | | | Pedido |
| ESTADOS UNIDOS | Marca Posicional (Sola) | 25 | 85949542 | 03/06/2013 | | | | Pedido |
| ESTADOS UNIDOS | MYOH | 25 | 85224817 | 24/01/2011 | | | | Pedido |

